1

2

3

4

5

6

7

8                                    UNITED STATES DISTRICT COURT
                                  WESTERN DISTRICT OF WASHINGTON
9                                             AT TACOMA

10   MICHAEL T. HANKINS and SINCERE
     HANKINS, husband and wife, and MICHAEL
11   WARD, SR. and KAREN E. WARD, husband
     and wife,                                              Case No. C06-5099 FDB
12
                   Plaintiffs,                              ORDER GRANTING DEFENDANTS'
13                                                          MOTION FOR SUMMARY JUDGMENT
             v.                                             ON TITLE VI CLAIMS
14
     CITY OF TACOMA, a municipal corporation,
15   TACOMA POLICE DEPARTMENT, and
     Tacoma Police Officers ROBERT BAKER,
16   JASON BROOKS, AND BRIAN S.
     GARRISON,
17
                   Defendants.
18

19

20           This civil rights action against the City of Tacoma and individual police officers stems from

21   the alleged conduct of police officers occurring in a traffic stop and the alleged failure of the City of

22   Tacoma to train and supervise the officers or investigate claims of misconduct.  Out of this common

23   nucleus of operative facts, Plaintiffs' assert numerous claims for violations of state tort law, federal

24   law and constitutionally protected rights.

25

26   ORDER - 1

1    Before the Court is Defendants' motion for summary judgment on Plaintiffs' Title VI cause

2   of action.  After having reviewed all materials submitted by the parties and relied upon for authority,

3   the Court is fully informed and hereby grants the motion for summary judgment and dismisses

4   Plaintiffs' Title VI claims.

5                                **INTRODUCTION AND BACKGROUND**

6        On May 8, 2003, Tacoma Police Officer Robert Baker initiated a traffic stop on Plaintiff

7   Michael Hankins.  Earlier in the day, Tacoma police officers had been advised of an armed robbery

8   that had occurred in Lacy, Washington.  The officers were provided with the license number of a

9   green Cadillac that had been involved in the robbery.  When Officer Baker first saw Michael

10  Hankins' vehicle, he recognized it as a dark-colored Cadillac.  Officer Baker followed the vehicle in

11  an attempt to determine whether it was the green Cadillac involved in the robbery.  As Officer Baker

12  caught up with the vehicle in the 2100 block of South J Street, he was able to determine it that it was

13  black, not green and that the license did not match that of the armed robbery vehicle.  Although the

14  license number and color did not match the description of the robbery vehicle, Officer Baker ran the

15  license number through his mobile data computer to confirm the plates belonged to the vehicle.

16  Officer Baker continued to follow the vehicle until he received information reflecting that the plates

17  belonged to the vehicle, but were canceled.  Officer Baker then initiated the traffic stop on Michael

18  Hankins for driving a vehicle with canceled license plates.  This stop occurred in the area where

19  Officer Baker had initially commenced to follow Michael Hankins, who had circled around and come

20  back to his original location, across the street from the residence of his father-in law.  Plaintiff and his

21  father-in law, Michael Ward, are African-Americans.  Officer Baker knew where Michael Ward

22  resided.

23

24

25

26  ORDER - 2

1    The accounts of what transpired after Officer Baker initiated the stop vary widely among the

2    parties.[1]  Plaintiffs' account follows.  Upon seeing Officer Baker activate the patrol lights, Michael

3    Hankins parked in front of his in-laws' residence where he knew there would be witnesses to what

4    transpired.  Mr. Hankins then got out of his vehicle and Officer Baker got out of his patrol car and

5    swore at Mr. Hankins, telling him to get back in his vehicle. Mr. Hankins wife, Sincere, and a number

6    of others were in Michael Ward's yard observing what was transpiring.  Officer Baker then told Mr.

7    Hankins to close the car door or he would shut it on his leg.  Officer Baker then reached in with his

8    right arm and grabbed Mr. Hankins by the throat.  Mr. Hankins could not breath and was gasping for

9    air.  Officer Jason Brooks appeared displaying pepper spray and told Mr. Hankins to comply with

10   Officer Baker's commands.  He did not spray Mr. Hankins.  Officer Garrison then appeared, placed

11   his taser against Mr. Hankins chest and deployed a taser charge.

12   Plaintiff Michael Ward was at the scene and provides the following account.  Mr. Ward saw

13   Officer Baker choking his son-in-law, Michael Hankins, and pleaded for the officers to stop their

14   assault on his son-in-law.  Without warning Mr. Ward was pepper-sprayed by Officer Brooks and

15   then tasered by Officer Garrison.

16   Michael Hankins was charged with violation of the vehicle code for driving with cancelled

17   license plates and obstructing a police officer.  The charges were ultimately dismissed.  Michael

18   Ward was charged with assault.  A jury trial found him not guilty.

19   An internal affairs investigation with respect to Officer Baker sustained allegations of

20   unsatisfactory performance and lack of courtesy as to Officer Baker.  Allegations of excessive force

21   were not sustained.  Allegations in respect to Officer Brooks and Officer Garrison for unsatisfactory

22   performance and lack of courtesy were determined to be unfounded and they were exonerated on

23

24   [1]Defendants concede that the differing accounts of what transpired preclude summary
     judgment on the causes of action for the use of excessive force and false arrest, either on the merits
25   or the basis of qualified immunity.

26   ORDER - 3

1  allegations of excessive force.

2      In regard to the conduct of the municipal defendant, Plaintiffs assert that "Officer Baker has

3  had numerous citizen complaints filed against him for excessive force, rudeness, profanity, and the

4  like, most of which have not been sustained and very little, if any discipline meted out to him."

5  Plaintiffs also cite to excerpts from a July, 1 2003 "Racial Profiling Data Collection Study Final

6  Report"(racial profiling study) prepared for the City of Tacoma Police Department as establishing

7  that "Tacoma Police Officers pulled over a disproportionate number of black drivers."

8      Plaintiffs assert claims for violations of Title VI of the Civil Rights Act, 42 U.S.C. § 2000d

9  on the basis the City of Tacoma Police Department, a recipient of federal funding, is engaged in

10  discriminatory practices in the form of racial profiling through the practice of targeting African-

11  Americans in stops, detentions, interrogations and searches of residents of the Hilltop neighborhood

12  of the City of Tacoma.

13                          **SUMMARY JUDGMENT STANDARD**

14      A court must grant summary judgment if the pleadings and supporting documents, viewed in

15  the light most favorable to the non-moving party, "show that there is no genuine issue as to any

16  material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P.

17  56(c); see also, Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  When considering a

18  summary judgment motion, the evidence of the non-movant is "to be believed, and all justifiable

19  inferences are to be drawn in his favor."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248

20  (1986).  These inferences are limited, however, "to those upon which a reasonable jury might return

21  a verdict."  Triton Energy Corp. v. Square D. Co., 68 F.3d 1216, 1220 (9th Cir. 1995).  Rule 56(c)

22  mandates the entry of summary judgment against a party who, after adequate time for discovery, fails

23  to make a showing sufficient to establish the existence of an element essential to that party's case,

24  and on which the party will bear the burden of proof at trial.  Celotex, at 322-23.  Rule 56(e)

25  compels the nonmoving party to "set forth specific facts showing that there is a genuine issue for

26  ORDER - 4

1    trial" and not to "rest upon the mere allegations or denials of [the party's] pleading."  The nonmoving

2    party must do more than "simply show that there is some metaphysical doubt as to the material

3    facts."  Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).

4    There is no issue for trial unless there is sufficient evidence favoring the non-moving party.

5    Anderson, at 249.  Summary judgment is warranted if the evidence is "merely colorable" or "not

6    significantly probative."  Id. at 249-50.

7                          **TITLE VI AND RACIAL PROFILING**

8          Title VI of the of the Civil Right Act provides that "[n]o person in the United States shall, on

9    the ground of race, color, or national origin, be excluded from participation in, be denied the benefits

10   of, or be subjected to discrimination under any program or activity receiving Federal financial

11   assistance." 42 U.S.C. § 2000d.  Private individuals may sue to enforce Title VI only in instances of

12   intentional discrimination.  Alexander v. Sandoval, 532 U.S. 275, 279-84 (2001).  The entity

13   involved must be engaged in intentional discrimination and be the recipient of federal funding.

14   Rodriguez v. California Highway Patrol, 89 F. Supp.2d 1131, 1139 (N.D. Cal. 2000).  To maintain a

15   private right of action under Title VI , a plaintiff must prove that he was victimized by a "program or

16   activity" that received federal funds. Buchanan v. City of Bolivar, Tennessee, 99 F.3d 1352, 1356

17   (6th Cir. 1996).  There must be a nexus between the alleged discriminatory conduct and the specific

18   program to which federal funds were directed. David K. v. Lane, 839 F.2d 1265, 1275-76 (7th Cir.

19   1988).

20         Thus, it must be determined whether Plaintiffs have evidenced intentional discrimination,

21   specifically, that the City of Tacoma's actions were motivated by race and that race was a

22   determining factor in the City's decisions.  Plaintiff must also establish a nexus between the alleged

23   discrimination (racial profiling) and the specific program that received federal funding.  See, David

24   K., at 1275-76.

25

26   ORDER - 5

1    Plaintiffs assert that the City of Tacoma supported a custom of racial profiling of African-

2  Americans residing in the Hilltop neighborhood, thereby subjecting them to disparate treatment.

3  Where an officer has reasonable suspicion or probable cause to initiate a stop, a person alleging

4  racial profiling must prove the officer acted in a discriminatory manner and that the discrimination

5  was intentional.  Bingham v. City of Manhattan Beach, 341 F.3d 939, 948 (9th Cir. 2003); Reese v.

6  Jefferson Sch. Dist. No. 14J, 208 F.3d 736, 740 (9th Cir. 2000).  It is undisputed that the license

7  plates on Michael Hankins vehicle were canceled at the time of the traffic stop and thus, Officer

8  Baker had a reasonable basis to initiate the stop.

9    Allegations of racial profiling may be sufficient to survive a motion to dismiss.  See,

10  Rodriguez v. California Highway Patrol, 89 F. Supp.2d 1131 (N.D. Cal. 2000).  However, on a

11  motion for summary judgment, bare allegations unsupported by legally competent evidence do not

12  give rise to a genuine dispute of material fact.

13    After having ample opportunity to conduct discovery, Plaintiffs rely on statements in their

14  own deposition testimony and the results of the "study on racial profiling" to establish a claim of

15  racial profiling.  Plaintiffs deposition testimony merely recite legal arguments and Plaintiffs' belief

16  that the incident was the product of racial profiling. There are no facts based upon Plaintiffs'

17  personal knowledge that evidence a pattern or practice of racial profiling by the Defendants.

18    Plaintiffs' selective references to the racial profiling study are insufficient evidence of

19  disparate treatment.   This statistical study shows disparate impact within the City of Tacoma, but

20  does not show disparate treatment among similarly situated motorist of different races.  Plaintiffs

21  must show not a disparity of motorists of each race stopped by police, but rather that the police

22  treated the defendants differently than other similarly situated motorists of another race.  See, United

23  States v. Bass, 536 U.S. 862, 863-64 (2002); Anderson v. Cornejo, 355 F.3d 1021, 1023-1025 (7th

24  Cir. 2004)  In the context of selective prosecution, the Ninth Circuit has held that data suggesting

25  more African-Americans are prosecuted federally does "not advance a defense of selective

26  ORDER - 6

1  prosecution without further consideration of the sociological factors affecting the pattern of crime

2  and without a showing that similarly situated defendants of other races had been left unprosecuted."

3  United States v. Turner, 104 F.3d 1180, 1185 (9th Cir. 1997).  Here the class of similarly situated

4  individuals necessarily would include motorists present in the area where Defendant officers were

5  patrolling and that were subject to the possibility of a traffic stop for similar driving infractions. See,

6  Chavez v. Illinois State Police, 27 F. Supp.2d 1053, 1066-1067 (N.D. Ill. 1998).  Plaintiffs'

7  statistical evidence fails this test.

8          On the issue of federal funding, Plaintiffs state that it is undisputed that the Tacoma Police

9  Department receives federal assistance, for example, through the federal Law Enforcement

10  Terrorism Prevention Program and the Department of Homeland Security grants.  Plaintiffs have

11  failed, however, to establish a nexus between a program funded by these federal monies and the

12  alleged racial profiling.  There is no evidence of how the Tacoma Police Department used its federal

13  money to target African-Americans residing in the Hilltop neighborhood.  The record contains no

14  evidence that City of Tacoma used federal funds to increase the number of officers on patrol in the

15  Hilltop.  Moreover, there is no evidence that any federal funds had any residual effect on law

16  enforcement in the Hilltop.  Particularly, Plaintiffs have failed to show that the traffic stop of Michael

17  Hankins was made possible, in whole or in part, by federal funding.

18          In sum, there is insufficient support for the claim of a nexus between the City of Tacoma

19  Police Department's federal funding and any alleged racial profiling.   Defendants' motion for

20  summary judgment on the Title VI claims, therefore, shall be granted.

21                                              **CONCLUSION**

22          For the reasons set forth above, the Defendant City of Tacoma and its Police Department are

23  entitled to summary judgment of dismissal of Plaintiffs' Title VI claims in their entirety.

24

25

26  ORDER - 7

1  ACCORDINGLY,

2  IT IS ORDERED:

3  Defendant City of Tacoma's Motion for Summary Judgment on Plaintiffs' Title VI claims

4  [Dkt. #47] is **GRANTED**, and these claims are dismissed, with prejudice.

5

6  DATED this 26th day of February, 2007.

7

8

9  _____

10  FRANKLIN D. BURGESS
   UNITED STATES DISTRICT JUDGE

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26  ORDER - 8